# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOHN KYLE RODRIGUEZ**                          **CIVIL ACTION**

**VERSUS**                                                    **NO.: 12-690-JJB-RLB**

**WELLS FARGO BANK, N.A. ET AL.**


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**


Signed in Baton Rouge, Louisiana, on June 12, 2014.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

JOHN KYLE RODRIGUEZ                                    CIVIL ACTION

VERSUS                                                 NO.: 12-690-JJB-RLB

WELLS FARGO BANK, N.A. ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on referral from the district judge of the court's *sua sponte* determination of the court's subject matter jurisdiction.  (R. Doc. 30).  On March 28, 2014, defendants Wells Fargo Bank, N.A., as Trustee for First Franklin Mortgage Loan Trust 2001-FF2, Asset-Backed Certificates, Series 2001-FF2 ("Wells Fargo")[1] and American Home Mortgage Servicing, Inc. ("American") (collectively, the "defendants") filed a memorandum in support of subject matter jurisdiction.  (R. Doc. 32).  On April 18, 2014, the plaintiff filed a memorandum in opposition of subject matter jurisdiction.  (R. Doc. 33).  The issue before the court is whether the amount in controversy is sufficient to support subject matter jurisdiction under 28 U.S.C. § 1332(a).

I.      **Background**

On October 1, 2012, the plaintiff filed this civil action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.  (R. Doc. 1-1, "Petition").  Wells Fargo is the assignee of a mortgage entered into by the plaintiff on November 1, 2001 regarding his residence in Baton Rouge, Louisiana.  American is the mortgage servicing company obtained by Wells Fargo.  The

---

[1] According to the defendants, the plaintiff wrongly identified Wells Fargo Bank, N.A. as a defendant.

plaintiff alleges that around September 2007, he began experiencing problems with the correct posting and application of his payments to his escrow account. (Petition, ¶ 6). The plaintiff claims that American admitted receiving payments for 9 months, but did not post those payments. (Petition, ¶ 8). The plaintiff alleges that because the credit reporting agencies reported that his mortgage had not been paid for 9 months, the plaintiff lacked the credit to refinance his home or purchase a new car. (Petition, ¶ 9(B)). In addition, the plaintiff claims that American added fees and charges to his mortgage from $5,000 to over $40,000. (Petition, ¶ 9(C)).

On September 12, 2011, the plaintiff hired Mortgage Redemption Services, Inc. ("MRSI") to assist him in resolving his issues with American. (Petition, ¶ 11). According to the plaintiff, MRSI conducted a forensic audit of the plaintiff's mortgage and orally advised him of several irregularities regarding the servicing of his mortgage. (*Id.*). The plaintiff claims that MRSI breached its contract by not providing the plaintiff with a written copy of its audit findings despite having been paid $990. (*Id.*).

After Wells Fargo initiated a successful foreclosure proceeding against the plaintiff in state court, the property was sold at a sheriff's sale on March 7, 2012. (R. Doc. 32 at 1-2). The plaintiff alleges that the defendants are solidarily liable for breach of contract, and tortious and improper taking of his home. (Petition, ¶ 2, 13). In the alternative, the plaintiff alleges that he is asserting the "abuse of rights" doctrine under Louisiana law. (Petition, ¶ 13). The plaintiff alleges that his damages include, but are not limited to:

(1) Losses of his residence of 19 years;

(2) Relocation and storage costs;

(3) Mental anguish, humiliation, embarrassment; and

(4) Damages to his credit reputation.

(Petition, ¶ 14).  The plaintiff does not further define what he is seeking with regard to "losses of his residence."

On November 2, 2012, the defendants removed the action, claiming that the court has original jurisdiction under 28 U.S.C. § 1332.  (R. Doc. 1).  The defendants attached to their Notice of Removal proof that the plaintiff's property was appraised for $87,500 and $90,000, and was sold at the sheriff's sale for $122,000.  (R. Doc. 1 at 4).

On February 6, 2013, the parties submitted a joint status report.  (R. Doc. 7).  In the status report, the plaintiff claims that the court "does not have jurisdiction because the amount in controversy does not exceed $75,000, exclusive of interest and cost," and that the plaintiff would "likely file a Motion to Remand based upon this" assertion.  (R. Doc. 7 at 1).  The plaintiff further stated that he calculated "his damages at $60,000 as follows: Damage to credit rating $40,000, and inability to purchase a new car essential for his business - $20,000."  (R. Doc. 7 at 6).  The plaintiff did not file a motion to remand following the joint status report.

Wells Fargo and American have moved for summary judgment.  (R. Docs. 11, 21).  In the plaintiff's opposition to Wells Fargo's motion, he asserts that he is seeking $60,000 in damages.  (R. Doc. 16 at 5).  The plaintiff attaches to his opposition his response to an interrogatory itemizing his damages as $40,000 for the sale of the house and $20,000 for damage to his credit.  (R. Doc. 16-1 at 2).  In light of these assertions, the district judge issued a *sua sponte* order raising the issue of whether the court may continue to exercise diversity jurisdiction.  (R. Doc. 30).  The parties submitted briefing presenting their positions with regard to the amount in controversy.  (R. Docs. 32, 33).

## II. Arguments of the Parties

The defendants argue that the court can properly exercise diversity jurisdiction because the defendants submitted "summary judgment type evidence" with their Notice of Removal proving that the amount in controversy has been satisfied and the plaintiff has not shown to a legal certainty that his recovery will not exceed the jurisdictional amount. The defendants assert that because the amount recovered on the sheriff's sale ($122,000) and the appraised value of the property ($87,500 and $90,000) exceed $75,000, the defendants have demonstrated that it was clear from the face of the petition that the amount the plaintiff believed to be at issue exceeded $75,000. (R. Doc. 32 at 5). The defendants further argue that the plaintiff's post-removal assertion that the amount in controversy is $60,000 does not divest the court of jurisdiction because it does not establish to a legal certainty that the plaintiff will not recover more than $75,000. (R. Doc. 32 at 6).

In response, the plaintiff argues that the defendants have not proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. The plaintiff argues that the defendants have not established that the amount in controversy requirement has been satisfied in either their Notice of Removal or an affidavit. (R. Doc. 33 at 7-8). Accordingly, the plaintiff argues that the only way the defendants could establish the amount in controversy is if it is facially apparent from the Petition. (*Id.*). The plaintiff then argues that the facts alleged in the Petition do not establish the amount in controversy, asserting that "counsel for plaintiff could have more clearly articulated the specifics of his claims – i.e., the 'loss of his home' really indicating (sic) the loss of the equity he had accrued." (R. Doc. 33 at 8). The plaintiff attached to his memorandum an affidavit notarized on April 17, 2014, stating that "the damages sustained

4

by him in this matter are estimated at $60,000 as per his sworn discovery responses submitted" and "his total damages are therefore less than $75,000, and that [he] so stipulates and agrees that he waves (sic) and will not accept any judgment in excess of $75,000." (R. Doc. 33-1 at 3).

## III.    Law & Analysis

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different states" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. §1447(c). The removal statute, 28 U.S.C. §1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. §1446(c)(2). If, however, the "State practice . . . does not permit demand for a specific sum . . . [removal] is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant may make this

showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy that support a finding of the jurisdictional minimum. *Id*. If the defendant can produce evidence sufficient to show by a preponderance that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938); *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1412 (5th Cir. 1995).

As the parties do not dispute that there is complete diversity,[2] the only issue with regard to diversity jurisdiction is whether the amount in controversy has been satisfied under 28 U.S.C. § 1332(a). The court will first consider whether it is facially apparent from the complaint that the plaintiffs' claims likely exceed $75,000. If not, the court will consider whether the defendants have set forth any facts in controversy supporting a finding of the jurisdictional minimum.

### A.    The amount in controversy is not facially apparent

Louisiana Code of Civil Procedure article 893(A) prohibits plaintiffs from specifying an amount of damages in a petition filed in Louisiana court. In the Petition, the plaintiff alleges that he is seeking to recover the following damages:

(1) Losses of his residence of 19 years;

(2) Relocation and storage costs;

(3) Mental anguish, humiliation; embarrassment, and

(4) Damages to his credit reputation

---

[2] The plaintiff is a citizen of Louisiana. (R. Doc. 1 at 2). The defendants are citizens of South Dakota, Delaware, Texas, and Washington. (R. Doc. 1 at 3-4).

(Petition, ¶ 14).  In accordance with article 893(A), the plaintiff does not specify the amount of damages sought.  Based on the facts alleged in the Petition, the court cannot quantify the plaintiff's alleged "losses of his residence of 19 years."  The Petition does not provide any monetary amounts that provide context for determining appropriate measure of damages for loss of this residence: the amount of the plaintiff's mortgage, plaintiff's payments made toward the mortgage, plaintiff's equity in the home, the appraised value of the residence, or the actual sales price of the residence.[3]  The Petition does not even provide the amounts due each month on the mortgage, though it does allege that the amount overdue on the mortgage ranged between $5,000 and $40,000.  Although the court could attempt to approximate reasonable damages for relocation costs, emotional damages, and damages to his credit reputation, those amounts alone would not come close to $75,000.  The court, therefore, concludes that it is not facially apparent from the Petition that the amount in controversy is satisfied.

**B.     The defendants have not established that the amount in controversy requirement is satisfied.**

Because the amount in controversy is not facially apparent, the court will consider whether the defendants have set forth any facts in controversy, or submitted summary judgment

---

[3] In their Memorandum in Support of Subject Matter Jurisdiction, the defendants argue that they have presented "summary judgment type" evidence proving that "it was clear from the face of the petition" that the amount in controversy is satisfied. (R. Doc. 32 at 4-5).  As set forth earlier in the defendants' memorandum, however, the Fifth Circuit has provided that defendants may prove that the amount in controversy is satisfied by either demonstrating that the amount in controversy is "facially apparent" or "by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." (R. Doc. 32 at 3 (quoting *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000)). Only where the amount in controversy is not "facially apparent" (and, therefore, ambiguous) does the court need to consider "summary judgment type evidence" to determine whether the amount in controversy is satisfied.  *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see also Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) ("In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.").

type evidence, that support a finding of the jurisdictional minimum. To support their argument that the amount in controversy has been satisfied, the defendants submitted with the Notice of Removal evidence that the residence sold for $122,000.00 and was appraised between $87,500.00 and $90,000.00. (R. Doc. 1 at 4).

The parties have not briefed the measure of the plaintiff's recoverable damages under Louisiana law. The defendants merely assert that the correct measure of damages is the value of the plaintiff's residence and submit evidence of the appraised value and sale price of the property. Similarly, the plaintiff asserts in his brief that he is actually seeking to recover "the loss of the equity he had accrued" as a result of the sale of his home, but does not reference any law limiting his recoverable damages to accrued equity. (R. Doc. 33 at 8). Neither party identifies plaintiff's equity in the home or the outstanding mortgage balance at the time of the sheriff's sale.[4]

Although the plaintiff's cause of action is somewhat nebulous, it appears that the plaintiff is attempting to recover damages for wrongful seizure and sale of his residence.[5] Assuming that the plaintiff can allege such a cause of action under Louisiana law, it appears that action would

---

[4] The plaintiff suggests, without supporting evidence, that his equity in the property is approximately $40,000 based on potential profit from the sale of the property at $160,000. (R. Doc. 33-1 at 2). Presumably, the $120,000 difference would reflect the outstanding mortgage balance. If the appraisals submitted by the defendants are the proper measure of value of the property, the plaintiff had negative equity in the property. If the court were to use the sales price at the sheriff's sale (it is noted that the purchaser was defendant Wells Fargo), the equity would be approximately zero.

[5] The Plaintiff asserts that the actions and inactions of the defendants "constitute a breach of contract, as well as a tortious and improper taking of plaintiff's home. Additionally, and in the alternative, [the defendants'] actions, constitute an "abuse of right" with[in] the meaning and purview of applicable Louisiana law and jurisprudence." (R. Doc. 1-1 at 4).

be analogous to a claim for conversion. [6]  The issue becomes whether, under Louisiana law, the recoverable damages for conversion of secured property is more appropriately measured by the amount of the sale amount, the appraised value of the property, the plaintiff's equity in the property (i.e., the appraised or sale value of the property minus the amount remaining on the mortgage), or some other measure.

In the absence of any briefing by the parties, the court declines to adopt the defendants' position that the amount in controversy is the full value of the property.  There is nothing before the court to demonstrate that the plaintiff would have any chance of recovering this amount without an offset of the outstanding balance owed to the defense.  The court finds persuasive the analysis set forth in *Bryant v. Sears Consumer Financial Corp.*, 617 So. 2d 1191 (La. App. 1st Cir. 1993).  In *Bryant*, the plaintiff financed the purchase of a motor home and sued his creditor for damages for conversion after his motor home was wrongly seized and sold.  Finding in favor of the plaintiffs, the trial judge first awarded the plaintiff his "equity" in the motor home, $3,760.00, but on reconsideration awarded the full value of the motor home, $29,760, which the trial judge found to be the plaintiff's "equitable interest" in the property.  *Id*. at 1193.  On appeal, the court concluded that the trial court was correct in awarding the plaintiff's "equitable interest" in the property as opposed to "equity," but mistakenly concluded that the plaintiff's equitable interest was the full value of the motor home.  *Id*. at 1194.  Instead, the court held that the plaintiff's equitable interest was the amount the plaintiff had paid on the purchase price of the motor home.  *Id*. (*citing Bryson v. Bates-Crumbly Chevrolet, Inc.*, 171 So. 605 (La. App. 2d Cir.

---

[6] The defendants have submitted motions for summary judgment arguing that the plaintiff's claims are defenses to the executory process and have been waived because they were not raised in the executory proceeding.  (*See* R. Doc. 11, R. Doc. 21).  The court dismissed these motions without prejudice to be reasserted once remand jurisdiction has been established.  (R. Doc. 30).  In deciding the plaintiff's motion to remand, the court takes no position with regard to whether the plaintiff has a right of action for recovery of damages for wrongful seizure and sale of his residence outside of the state executory process.

1937)).  The court concluded that the plaintiff was entitled to recover the amount of his down payment, $13,080.00, a trade-in valued at $869.06, and his monthly installment payments toward the mortgage, which would have to be determined on remand.  Here, the defendants have not submitted any evidence of the plaintiff's actual payments toward the purchase price of the property at issue.

The court notes that some decisions issued from federal district courts in Texas have concluded that, where a plaintiff prospectively seeks to enjoin the foreclosure of a home, the measure of the value of the thing to be protected (and the amount considered for jurisdictional purposes) is the value of the home.  *See*, *e.g.*, *Martinez v. BAC Home Loans Servicing, LP*, 777 F. Supp. 2d 1039 (W.D. Tex. 2010) (court had jurisdiction where the plaintiff sought preliminary and permanent injunction to prevent the defendant from foreclosing on his home and the value of his home exceeded $75,000); *Azzam v. Wells Fargo Bank, N.A.*, No. 10-cv-4616, 2011 WL 149350 (S.D. Tex. Jan. 18, 2011) (same); *but see Correa v. CitiMortgage, Inc.*, No. 11-cv-802, 2012 WL 242833 (N.D. Tex. Jan. 25, 2012) (remanding action where plaintiff sought injunctive relief to prevent foreclosure, because the value of the plaintiffs' rights in the litigation was, at most, "the value of their interest in the property, not the value of the property itself").

The analysis in these cases is distinguishable because the plaintiff in this action is not seeking prospective relief in the form of an injunction, but is instead seeking to recover damages for wrongful seizure and sale of his residence.  *See Martinez*, 777 F. Supp. 2d at 1045 ("Had plaintiff brought suit for wrongful foreclosure, there is no question the measure of damages would be 'the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness.'  However, such an event has not occurred  . . .") (citing various cases interpreting Texas law).

In the alternative to recovering damages based on equity in the property or his actual payments made to the mortgage company, the plaintiff may also be attempting to raise a cause of action for unjust enrichment measured by the alleged payments made to American that were not credited to his account. *See Avery v. CitiMortgage, Inc.*, 15 So.3d 240, 245 (La. 1st Ct. App. 2009). According to the status report submitted by the parties, the defendants represent that the plaintiff made partial mortgage payments from March 2009 through November 2009 that were put in a "suspense account" and then later credited to the plaintiff's account when the full payment amount was submitted. (R. Doc. 7 at 4). Assuming these are the amounts the plaintiff may be seeking under an unjust enrichment theory, those partial payments total only approximately $8,000. (*Id.*).

Considering the foregoing jurisprudence, the court is satisfied that the plaintiff's recoverable damages for "losses to his home for 19 years" is measured either by the plaintiff's payments made to the mortgage company, the plaintiff's uncredited payments toward his mortgage, or the plaintiff's equity in the property. The defendants, which carry the burden of proof, have not submitted any supporting law establishing the sale price or appraised value of the property as the correct measures of damages in light of the plaintiff's allegations. Although the defendants have submitted summary judgment type evidence establishing the sale price and appraised value of the home, the court remains unable to discern the amount of payments the plaintiff has made toward the purchase price of his home. According to the plaintiff, his equity in the home would be only $40,000 if the house sold for $160,000, and the actual sales price and appraised value of the home suggest that the plaintiff had zero or negative equity. The defendants have not submitted any evidence that the amount the plaintiff has paid on the property or the plaintiff's equity in the property would, in conjunction to the plaintiff's other

claimed damages, exceed the jurisdictional amount. Similarly, if unjust enrichment to the defendants is the proper measure of damages, then the plaintiff would stand only to recover approximately $8,000 in addition to his other claimed damages.

Furthermore, because the Petition is ambiguous with regard to the amount in controversy, the court may consider the plaintiff's post-removal stipulation offered to clarify the amount in controversy. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("[P]ost-removal affidavits may be considered in determining the amount in controversy at the time of the removal."); *ANPAC*, 988 F.2d at 565 (when the affidavit "clarif[ies] a petition that previously left the jurisdictional question ambiguous," the court may consider it in determining whether remand is proper); *McGlynn v. Huston*, 693 F. Supp. 2d 585, 596 (M.D. La. 2010) (properly considering post-removal affidavit regarding the amount in controversy "since [defendant] failed to carry his burden of proof upon removal and the amount in controversy remains ambiguous"); *Royal Cosmopolitan, LLC v. Star Real Estate Group, LLC*, 629 F. Supp. 2d 594, 597 (E.D. La. 2008) ("When the amount in controversy is ambiguous, as it is here, the nonremoving party may submit [a post-removal] affidavit to clarify the amount of damages sought.").

A plaintiff's stipulation that the amount in controversy is satisfied is only binding "if, within that stipulation, [he] expressly renounced his right to recover in excess of $75,000.00" in state court. *McGlynn*, 693 F. Supp. 2d at 593 (plaintiff's stipulation was not binding because it failed to "provide that he will not accept more than [$75,000] in the event he is awarded that amount in state court"); *see also Printworks, Inc. v. Dorn Co., Inc.*, 869 F. Supp. 436, 440 (E.D. La. 1994) (stipulations which "fall short of stipulating that the claimant will not seek more than the jurisdictional amount" are not binding). This is because a Louisiana state court can award all damages to which it feels a plaintiff is entitled, regardless of what is plead in the petition. *See* La.

C. Civ. P. art. 862 ("a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings").

Here, the plaintiff submitted, by affidavit, a binding post-removal stipulation that the amount in controversy does not exceed $75,000.00. The plaintiff provides in the affidavit that his damages are "estimated at $60,000 as per his sworn discovery responses" and that "his total damages are therefore less than $75,000, and that [he] so stipulates and agrees that he waves (sic) and will not accept judgment in excess of $75,000." (R. Doc. 33-1). Through his binding post-removal stipulation, and in light of the defendants' lack of evidence establishing that plaintiff's recoverable damages exceed $75,000, the plaintiff has made it clear that the amount in controversy is not satisfied.

## IV. Conclusion

For the foregoing reasons, the court does not have subject matter jurisdiction under 28 U.S.C. §1332(a) because the amount in controversy requirement has not been satisfied.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the court should *sua sponte* **REMAND** the case to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on June 12, 2014.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE